PIERCE, Appellant,

v.

PIERCE, Appellee.

[Cite as *Pierce v. Pierce*, 168 Ohio App.3d 556, 2006-Ohio-4953.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 05 CO 49.

Decided Sept. 21, 2006.

Dominic A. Frank, for appellant.

DeGenaro, J.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-appellant, Tammy Pierce, appeals the decision of the Columbiana County Court of Common Pleas that named defendant-appellee, Joel Day Pierce Sr., residential parent of the parties' minor child. Tammy raises two issues on appeal.

{¶ 2} First, Tammy contends that the trial court erred by not allowing her to admit certain evidentiary material that she was unable to obtain prior to a hearing before the magistrate. A trial court must admit such evidentiary material if a party demonstrates that with reasonable diligence she could not have produced that evidence for the magistrate's consideration. In this case, Tammy demonstrated only that she did not obtain the proffered evidence, not that she could not obtain that evidence. Accordingly, the trial court did not abuse its discretion when it refused to admit Tammy's evidence.

{¶ 3} Second, Tammy claims that the trial court abused its discretion when it named Joel residential parent. The statutory factors do not weigh heavily in favor of either parent, so the trial court named Joel residential parent because both Tammy and her fiancé have a pack-a-day smoking habit. The Ohio Supreme Court has catalogued the risks of secondhand smoke to children and courts have used the fact that a parent smokes as a factor to consider when making custody determinations. Accordingly, the trial court's decision was reasonable and, therefore, not an abuse of discretion.

{¶ 4} For these reasons, the trial court's decision is affirmed.

## Facts

{¶ 5} Tammy and Joel were married on January 16, 1999, and Joel Day Pierce Jr., born on March 21, 2000, is their only child. The parties experienced marital difficulties, which lead to Tammy filing for divorce on November 6, 2001. On May 29, 2003, the trial court issued a divorce decree, which implemented a shared-parenting plan agreed to by the parties. Under the terms of that plan, the child would spend alternating months with each parent. Since Tammy was living in Florida, the plan described the place for and time of each exchange of custody.

{¶ 6} On March 22, 2005, Tammy moved to terminate the shared-parenting plan because the child was going to be entering kindergarten in the fall and one parent needed to be named residential parent. The motion was heard before a magistrate on July 15, 2005. In a decision filed on July 21, 2005, the magistrate decided that Joel should be named residential parent. It found that both parents

were good parents and named Joel residential parent because both Tammy and her fiancé smoke heavily, while Joel and his new wife did not.

{¶ 7} Tammy objected to the magistrate's decision on July 29, 2005, and requested a hearing before the trial court. At the hearing before the trial court on August 11, 2005, Tammy tried to introduce medical reports showing that the child was not allergic to smoke. In its judgment entry, the trial court denied admission of this evidence and concluded that the only major difference between the parties was the fact that Tammy and her fiancé smoked. Accordingly, it affirmed the magistrate's decision and named Joel as residential parent.

{¶ 8} On appeal, Joel has failed to file a responsive brief. Pursuant to App.R. 18(C), we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." *State ex rel. Montgomery v. R & D Chem. Co.* (1995), 72 Ohio St.3d 202, 204, 648 N.E.2d 821.

New Evidence after Objections to a Magistrate's Decision

{¶ 9} In the second of two assignments of error, Tammy argues:

{¶ 10} "The trial court abused its discretion to the prejudice of the Appellant-mother by refusing to admit medical records into evidence at the objection hearing as same were unavailable to the Appellant at the time of trial."

{¶ 11} Tammy contends that the trial court erred when it failed to consider medical evidence that she introduced at the hearing on her objections, despite the fact that she exercised reasonable diligence in trying to obtain this evidentiary material prior to the hearing before the magistrate, but could not do so. Since she could not obtain the evidence through the exercise of reasonable diligence before the magistrate's hearing, she maintains that the trial court should consider that evidence when reviewing her objections.

{¶ 12} Civ.R. 53(E)(4)(b) describes the procedure a trial court must employ when ruling on objections to a magistrate's decision. That rule provides:

{¶ 13} "The court shall rule on any objections the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration."

{¶ 14} Civ.R. 53(E)(4)(b) gives a trial court broad discretion when deciding whether to hear additional evidence, but "a plain reading of the second sentence of Civ.R. 53(E)(4)(b) limits this discretion and requires acceptance of the new evidence if the objecting party demonstrates with reasonable diligence that it

could not have produced the new evidence for the magistrate's consideration." *Johnson–Wooldridge v. Wooldridge* (July 26, 2001), 10th Dist. No. 00AP–1073, at 2, 2001 WL 838986. The question in this case is whether the trial court had to admit the evidence because it could not have been produced with reasonable diligence or whether the decision to admit this evidence falls within the trial court's broad discretion.

{¶ 15} When determining whether a party has exercised reasonable diligence under Civ.R. 53(E)(4)(b), the Tenth District Court of Appeals has said that the crux of this analysis is whether the party was put on notice that they would be reasonably expected to introduce this evidence at the hearing before the magistrate. Id. If a party had notice that they would be reasonably expected to introduce evidence on a subject, then the trial court had the discretion to accept or reject that evidence. Id.

{¶ 16} The Second District Court of Appeals followed this principle in *Baire v. Baire* (1995), 102 Ohio App.3d 50, 656 N.E.2d 984. In *Baire,* a party failed to present evidence at a hearing before a magistrate and blamed this failure upon an illness that kept him from the hearing. The trial court denied his request and the appellate court affirmed that decision.

{¶ 17} "As the trial court noted, Mr. Baire had notice of the hearing date more than two months prior to the hearing, but he failed to request a continuance in a timely manner. Through 'reasonable diligence' he could have requested a continuance earlier. Nothing of record suggests that the trial court would not have acted favorably on a timely request for continuance, thus enabling Mr. Baire to present his evidence to the referee. Furthermore, he made no showing that an attorney could not have appeared at the hearing on his behalf and sought the introduction of the evidence through cross-examination of Mrs. Baire. Therefore, the trial court acted within its discretion in refusing to consider the evidence Mr. Baire submitted with his objections." Id. at 53, 656 N.E.2d 984.

{¶ 18} In this case, Tammy asked the judge to accept certain medical records to show that her son's health had not been adversely affected by her smoking. She explained that she had tried to obtain those records prior to the hearing before the magistrate, but could not because the doctor had not sent the proper information.

{¶ 19} Tammy's explanation shows that she was on notice that she could be reasonably expected to introduce this evidence at the hearing before the magistrate. Furthermore, she does not explain why she did not seek a continuance of the hearing once she realized she did not have the medical records she requested. Nothing in the record indicates that the trial court would have acted unfavorably to a request for a continuance for this reason. Accordingly, Tammy did not act

with reasonable diligence to insure that these facts were introduced at the hearing before the magistrate. Thus, the decision regarding whether to admit this evidence fell within the trial court's broad discretion.

{¶ 20} The trial court did not abuse its discretion when it refused to admit this testimony. As it explained in its entry, it did not believe that such evidence would affect its decision. According to the trial court, the health risks of smoking and secondhand smoke were common knowledge and medical records showing that the child was not yet suffering ill effects due to smoke was not proof that the child would not suffer ill effects due to smoke. This conclusion was reasonable and we will not disturb it on appeal. Tammy's arguments to the contrary are meritless.

### Residential Parent

{¶ 21} In her first assignment of error, Tammy argues:

{¶ 22} "The trial court abused its discretion to the prejudice of the Appellant-mother in naming the Appellee the primary residential parent of the parties' minor child."

{¶ 23} According to Tammy, the record shows that she was the child's primary caregiver and that the child was better adjusted to her home and community. She further argues that the trial court placed too much weight on the fact that she smokes. According to Tammy, she took all necessary steps to ensure that the child was not exposed to secondhand smoke.

{¶ 24} The basic standard of review of a trial court's decision regarding child custody is whether the court abused its discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. "A child-custody decision that is supported by a substantial amount of competent and credible evidence will not be reversed on appeal absent an abuse of discretion." *Myers v. Myers,* 153 Ohio App.3d 243, 2003-Ohio-3552, 792 N.E.2d 770, ¶ 43. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. "The discretion exercised by the trial court must be given our utmost respect as the trial court is in a superior position to evaluate the parties' credibility and the relevant factors." *Lewis v. Lewis* (Jan. 31, 2001), 7th Dist. No. 99–JE–6, at 4, 2001 WL 96143.

{¶ 25} When a court is determining who should be a minor child's residential parent, it must look to the factors in R.C. 3109.04(F)(1):

{¶ 26} "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and

responsibilities, the court shall consider all relevant factors, including, but not limited to:

{¶ 27} "(a) The wishes of the child's parents regarding the child's care;

{¶ 28} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

{¶ 29} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

{¶ 30} "(d) The child's adjustment to the child's home, school, and community;

{¶ 31} "(e) The mental and physical health of all persons involved in the situation;

{¶ 32} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶ 33} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶ 34} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

{¶ 35} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶ 36} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶ 37} In this case, the statutory factors do not weigh heavily in favor of either parent over the other. Both parents provide the child with a warm, loving home environment. The child has a room to himself in each parent's home. Tammy's family lives close to her in Florida and is involved in the child's life. Joel's family lives near him in Ohio and is involved in the child's life. The child seems to be well adjusted to each community. Each parent acknowledges that the other is a good parent. Finally, each of the parents acknowledges that they honor and facilitate the court-ordered parenting and visitation schedule. Based on these facts, the trial court reasonably concluded that there were "no major differences between the parties."

{¶ 38} Tammy takes issue with this conclusion, arguing that she has been the child's primary caregiver and that the child is better adjusted to her home and community. However, each of these arguments is countered by the record. First, the parties had been exercising equal parenting time pursuant to the shared-parenting plan for almost two years before Tammy moved to terminate the shared parenting plan. This fact indicates that neither party had been the child's primary caregiver because the parties had been caring for the child equally. *Francis v. Francis,* 2nd Dist. No. 19367, 2003-Ohio-1940, 2003 WL 1901302, at ¶ 22–23.

{¶ 39} Likewise, the record does not show that the child is better adjusted to either parent's home and community. He has friends and family in both Florida and Ohio; each parent tried, to varying degrees of success, enrolling the child in extracurricular activities; and the child was going to be enrolled in kindergarten in the fall of 2005, so his adjustment to school was irrelevant at that point in time.

{¶ 40} Contrary to Tammy's arguments, there is not a meaningful difference between the care she provides to the child and that provided by Joel, with one exception which both the magistrate and the trial court relied on when making the custody determination.

{¶ 41} After finding "no major differences between the parties," the trial court awarded custody to Joel because both Tammy and her fiancé have a pack-a-day smoking habit. Tammy and her fiancé both testified that they smoked outside the house when at home and did not smoke inside the car with the child. But Joel testified that the child's clothing would smell strongly of smoke after the child had been living in Florida. In addition, the child's doctor in Ohio told Joel that some of the child's illnesses, such as ear infections, were linked to Tammy's smoking.

{¶ 42} The Ohio Supreme Court catalogued the risks that secondhand smoke poses, especially to children, in *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536.

{¶ 43} "According to a 1986 report by the United States Surgeon General, exposure to secondhand smoke is a cause of disease, including lung cancer, in healthy nonsmokers. The Surgeon General's report further found that environmental tobacco smoke was associated with an increased frequency of respiratory illnesses in young children.

{¶ 44} "A 1996 study conducted by the United States Department of Health and Human Services' Centers for Disease Control and Prevention ('CDC') determined that nearly nine out of ten nonsmoking Americans are exposed to secondhand smoke. Secondhand smoke has been found to contain over 4,000 chemicals and 40 carcinogens. The United States Environmental Protection Agency and the National Institutes of Health have classified environmental tobacco smoke as a known human carcinogen, a designation which means there is sufficient evidence that the substance causes cancer in humans. The United States Environmental Protection Agency estimates that secondhand smoke causes approximately 3,000 lung cancer deaths in nonsmokers each year. In addition, according to the United States Environmental Protection Agency and scientific studies, environmental tobacco smoke accounts for as many as 37,000 deaths from heart disease in nonsmokers each year. The CDC indicates that the number of coronary-related deaths could be as high as 62,000. Finally, as previously indicated, the Surgeon General, as well as other health agencies, has concluded that secondhand smoke impairs the respiratory health of thousands of young children. Studies have indicated that infants and children exposed to secondhand smoke run a higher risk of developing pneumonia, bronchitis, asthma, and middle-ear infections." (Footnotes omitted.) Id. at ¶ 52–53.

{¶ 45} Given these health risks, courts have concluded that whether a parent smokes is a proper factor to consider when making child custody determinations. See *Day v. Day*, 5th Dist. No. 04 COA 74, 2005-Ohio-4343, 2005 WL 2002249, at ¶ 26–29; *In re C.H.*, 8th Dist. Nos. 82258 and 82852, 2003-Ohio-6854, 2003 WL 22966248, at ¶ 57; *In re Lamtman* (Dec. 12, 2001), 9th Dist. No. 20634, 2001 WL 1581572; *In re Julie Anne*, 121 Ohio Misc.2d 20, 2002-Ohio-4489, 780 N.E.2d 635, at ¶ 57. We cannot disagree.

{¶ 46} In this case, the trial court used the fact that Tammy and her fiancé smoked as one factor among many it considered when it named Joel as residential parent. However, since it reasonably concluded that the other factors did not weigh in favor of granting custody to either parent, this was the one factor it relied upon to make its ultimate conclusion. The trial court's decision in this regard was reasonable, so it did not abuse its discretion when it named Joel as residential parent. Tammy's arguments to the contrary are meritless.

Conclusion

{¶ 47} In conclusion, the trial court did not abuse its discretion when it refused to admit evidence that Tammy could have obtained prior to a hearing before the magistrate. Furthermore, its decision naming Joel as residential parent is reasonable since the statutory factors do not weigh heavily in favor of either parent and both Tammy and her fiancé smoke heavily. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

DONOFRIO, P.J., and VUKOVICH, J., concur.