[Cite as *Maddox v. Maddox*, 2016-Ohio-2908.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ANNE JO MADDOX, | : | APPEAL NO. C-140718 |
| | | TRIAL NO. DR-1101201 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| MATTHEW R. MADDOX, | : | |
| | | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 11, 2016

*Michaela Stagnaro,* for Plaintiff-Appellee,

*Dinsmore & Shohl, L.L.P.,* and *Timothy A. Tepe,* for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**Mock, Judge.**

{¶1} Defendant-appellant Matthew Maddox appeals from the trial court's judgment entry on objections, which ordered him to pay child support to plaintiff-appellee Anne Jo Maddox for their three minor sons and awarded her $8,000 in attorney fees. On appeal, he raises six assignments of error. He argues that the trial court erred by making an order of child support before the termination of his spousal-support obligation, by refusing to consider additional evidence that he could not have produced for the hearing before the magistrate on child support, and by miscalculating his child-support obligation. He challenges the trial court's calculation of income he received from restricted stock units and bonuses, and argues that the trial court failed to apply the R.C. 3119.23 deviation factors when ordering him to pay child support above the $150,000 guideline amount. Finally, he contends the trial court erred by ordering him to pay $8,000 of Anne's attorney fees.

{¶2} After reviewing the parties' shared-parenting agreement, we cannot conclude the trial court erred by making an award of child support. But we reach a different conclusion with respect to the additional evidence Matthew proffered on the objections. Because Matthew has demonstrated a likelihood that he could not have with reasonable diligence produced that evidence to the magistrate, we conclude the trial court erred by failing to consider his motion before ruling on his objections. Because this additional evidence may affect the trial court's calculation of Matthew's child-support obligation and its decision to award attorney fees to Anne, our resolution of his first assignment of error renders moot his third, fourth, fifth, and sixth assignments of error. We, therefore, affirm the trial court's judgment in part, reverse it in part, and remand the matter to the trial court for further proceedings consistent with this opinion and the law.

2

### Trial Court Proceedings

{¶3}   Anne and Matthew were married in 2003. They had three sons during the marriage.   Their marriage was terminated by a divorce decree journalized December 29, 2011.  The divorce decree provided that Matthew would pay no child support for the parties' three minor sons, expressly acknowledging that, "This [wa]s a deviation from the guideline amount of child support because of the amount of spousal support paid."

{¶4}   The divorce decree incorporated a separation agreement, under which Anne received spousal support from Matthew in the amount of $7,500 per month from January 1 to September 30, 2011, ("Phase I") and $9,500 per month from October 1, 2011, through December 31, 2013, ("Phase II"). Effective January 1, 2014, Anne's spousal support was reduced to $1500 per month for 24 months ("Phase III") after which time Anne's spousal support terminated.  The separation agreement further provided that if Anne sought to modify child support during Phase I or II, her spousal support would be reduced $1.60 for every $1 of child support awarded.

{¶5}   Anne and Matthew also entered into a shared-parenting plan.  The trial court approved the shared-parenting plan, and granted a final decree of shared parenting on December 29, 2011, the same day that it journalized their decree of divorce.  The shared-parenting plan provided in pertinent part:

> Based on the respective incomes of the parties and acknowledging
> Matthew's payment of spousal support, at this time it is agreed that
> no child support shall be paid by either parent.   Based on the
> respective incomes in each household while spousal support is
> being paid/received and the time the children will spend with each

parent, it is agreed this is just and appropriate and in the children's best interest. Effective upon the termination of spousal support, child support shall be calculated and effective that date of termination of spousal support.

{¶6} On January 1, 2014, Anne filed a motion to set Matthew's child-support obligation for their three minor sons, to modify the parties' shared-parenting time, and for an award of attorney fees. The parties agreed to mediate the parenting-time issue. With respect to child support, Matthew argued that under the terms of the shared-parenting plan the trial court could not order him to pay child support until his obligation to pay spousal support had terminated. The magistrate disagreed, holding that the parties' intent with respect to child support was clear from the language of the shared-parenting plan and the separation agreement. The magistrate found that once Phase II spousal support had terminated, Anne could seek an order of child support. The magistrate set a child-support order of $665.17 per month per child beginning January 1, 2014.

{¶7} Matthew filed objections, which the trial court overruled in part and sustained in part. The trial court agreed with the magistrate's interpretation of the shared-parenting plan and the separation agreement, reasoning that neither prohibited a child-support order before spousal support terminated. The trial court noted that the shared-parenting plan specified only that child support could not be ordered at the time of the decrees because of the amount of spousal support Matthew was paying to Anne at that time. But the trial court vacated the order of child support because it had been based on incomplete income information.

{¶8} The magistrate held hearings on March 31, 2014, May 31, 2014, and June 2, 2014. On May 15, 2014, Anne filed a motion for contempt and a motion

4

for attorney fees pursuant to R.C. 3105.73(B). Both Anne and Matthew testified during the hearings about their respective incomes. Anne and Matthew filed written closing arguments with proposed findings of fact and conclusions of law on July 1, 2014. On July 16, 2014, the magistrate entered a decision with findings of fact and conclusions of law, along with an order for child support, which was signed by the trial court, for $996.42 per month per child. The magistrate denied Anne's motion for contempt, but awarded her $8,000 in attorney fees. Both Anne and Matthew filed timely objections to the magistrate's decision.

{¶9} On October 29, 2014, the day before oral argument on the parties' objections, Matthew filed a motion to submit additional evidence in support of his objections to the magistrate's decision. Matthew attached to the motion a letter from his employer dated September 25, 2014, notifying him that as part of a 6,000-person layoff, he was being terminated from employment effective October 10, 2014, as well as a copy of his separation agreement, and a recalculated child-support worksheet.

{¶10} The record reflects that prior to hearing Anne's and Matthew's objections, the trial court met with Matthew's and Anne's counsel in chambers, discussed Matthew's motion to submit additional evidence as well as the case law Matthew had provided, and orally denied Matthew's motion to submit this additional evidence. The trial court, however, permitted Matthew to proffer the additional evidence outside of its hearing.

{¶11} After the trial judge had left the courtroom, Matthew was sworn by a deputy clerk. Upon questioning by his counsel, Matthew stated that he had known his employer, Cisco Systems, was in the process of restructuring and that 6,000 Cisco employees were going to be laid off, but he had been unaware that he would be affected by the layoffs until he received a letter on September 25, 2014, notifying him

5

that his entire organization had been eliminated. The letter provided that his employment was being terminated effective October 10, 2014.  Matthew testified that prior to his termination he had received a bonus on September 20, 2014, of $22,710, but he had not received any grants of restricted stock units or options. Matthew further stated that all his unvested restricted stock units were lost as a result of his termination of employment and that he had no way of recovering the money from those shares.  Matthew identified his letter of termination. He further stated that he had signed an agreement letter, which described his benefits and severance package. He identified a child-support worksheet, which stated his bonus income as $22,710, and a media report detailing the elimination of his organization as part of the layoff. Matthew's counsel then proffered these exhibits for the record.

{¶12}  Following this proffer, the trial court reentered the courtroom and heard oral argument on the parties' objections. It overruled some of Matthew's and Anne's objections, sustained some of their objections, and adopted the magistrate's decision to the extent it was not inconsistent with the court's entry on the objections. The trial court found Matthew's base income to be $181,481.  It allocated to him $85,301 in bonus income and $50,955 in "other income" attributed to his restricted stock units for a total income of $320,891.  The trial court found Anne's income to be $29,000 as a legal assistant, $2,000 from her Pilates' instruction, and $18,000 in spousal support, for a total income of $49,000.  The trial court ordered Matthew to pay $999.80 per month per child, and adopted the portion of the magistrate's decision ordering Matthew to pay $8,000 of Anne's attorney fees.

### Additional Evidence

{¶13} In his first assignment of error, Matthew challenges the trial court's denial of his motion to present additional evidence pursuant to Civ.R. 53(D)(4)(d). Civ.R. 53(D)(4)(d) provides:

> If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶14} While Civ.R. 53(D)(4)(d) gives the trial court broad discretion in deciding whether to hear additional evidence, a plain reading of the last sentence of Civ.R. 53(D)(4)(d) limits this discretion and requires acceptance of additional evidence if the objecting party demonstrates that with reasonable diligence, it could not have produced the evidence for the magistrate's consideration. *See Riley v. Riley*, 6th Dist. Huron No. H-08-019, 2009-Ohio-2764, ¶ 20, quoting *Johnson-Wooldridge v. Wooldridge*, 10th Dist. Franklin No. 00AP-1073, 2001 Ohio App. LEXIS 3319 (July 26, 2001).

{¶15} In determining whether a party has exercised reasonable diligence, Ohio appellate courts have held that the crux of the analysis is whether the party was put on notice that they would be reasonably expected to introduce the evidence at the hearing before the magistrate. *Johnson-Wooldridge*, 10th Dist. Franklin No. 00AP-

7

1073, 2001 Ohio App. LEXIS 3319, at *17. If the party had notice that they would be reasonably expected to introduce evidence on the subject, then the trial court has discretion to accept or reject that evidence. *Id.* *See also Pierce v. Pierce*, 168 Ohio App.3d 556, 2006-Ohio-4953, 860 N.E.2d 1087, ¶ 15 (7th Dist); *In re C.L.*, 8th Dist. Cuyahoga No. 93720, 2010-Ohio-682, ¶ 12; *Riley*, 6th Dist. Huron No. H-08-019, 2009-Ohio-2764, at ¶ 20; *Hudson Presbyterian Church v. Eastminster Presbytery*, 9th Dist. Summit No. 24279, 2009-Ohio-446, ¶ 14; *Porter v. Ferrall*, 11th Dist. Portage No. 2002-P-0109, 2003-Ohio-6685, ¶ 19; *McClain v. McClain*, 11th Dist. Portage No. 98-P-0002, 1999 Ohio App. LEXIS 4655, *12-13 (Sept. 30, 1999); *Brooks v. Brooks*, 10th Dist. Franklin No. 95APF03-381, 1995 Ohio App. LEXIS 5488, *37-42 (Dec. 14, 1995).

{¶16} Matthew argues the trial court abused its discretion when it refused to hear the additional evidence related to his loss of employment because this evidence arose after the magistrate's hearing, and thus, he could not have with "reasonable diligence" presented it to the magistrate. He argues that evidence of his loss of employment, his actual 2014 bonus, his receipt of zero restricted stock units for 2014, and his loss of all unvested restricted stock units, was relevant to the trial court's calculation of his child-support obligation and his ability to pay Anne's attorney fees pursuant to R.C. 3105.73(B). Thus, the trial court should have held a hearing to entertain this new evidence.

{¶17} Anne argues that the trial court did not abuse its discretion in denying Matthew's motion to admit this additional evidence. She asserts that under Civ.R. 53(D)(4)(d), when a party seeks to introduce additional evidence, the party is limited to evidence that existed at the time of the magistrate's hearing, but that the party could not produce with "reasonable diligence." As support for her position, she

8

cites two cases from the Second Appellate District, *In re Custody of Harris*, 2d Dist. Champaign No. 2005-CA-27, 2006-Ohio-3746, ¶ 23-24, and *Vander Kam v. Brown*, 2d Dist. Montgomery No. 25473, 2014-Ohio-632, ¶ 15. But neither case addresses a trial court's taking of additional evidence pursuant to Civ.R. 53(D)(4)(d).

{¶18} Anne acknowledges that a number of appellate districts have read the rule more broadly to require a trial court to consider any evidence the party could not produce with reasonable diligence to the magistrate, including new evidence that arises after the magistrate's hearing, but before the trial court's hearing on objections. *See Welch v. Welch*, 4th Dist. Athens No. 12CA12, 2012-Ohio-6297; *Winston v. Winston*, 5th Dist. Stark No. 1999CA00313, 2000 Ohio App. LEXIS 5343 *18 (Nov. 16, 2000); *Morrison v. Morrison*, 9th Dist. Summit No. 27150, 2014-Ohio-2254, ¶ 26. But she argues, nonetheless, that this court should not follow these appellate courts' interpretation of Civ.R. 53(D)(4)(d) because it will create "bad law" in this district by "encourag[ing] parties to make changes before an entry on objections, in order to avoid an unfavorable magistrate's decision," and by reducing the finality of the proceedings before a magistrate. *See Welch* at ¶ 18 and 23; *see also Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 45.

{¶19} Anne's concerns, however, have been directly addressed by the Fourth and Ninth Appellate Districts. In reading Civ.R. 53(D)(4)(d) to encompass evidence that arises during the interval between the magistrate's decision and the trial court's judgment, these courts have focused on the nature of proceedings under Civ.R. 53—recognizing that a magistrate's decision is not effective until adopted by the court. They have also focused on the nature of matters involving children, noting that the procedures are fluid and often subject to change. *See Welch* at ¶ 11-12; *In re A.S.*, 9th Dist. Summit No. 2642, 2013-Ohio-1975, ¶ 14-20 (analyzing identical

9

language in Juv.R. 40(D)(4)(d)). Thus, they reason that interpreting Civ.R. 53(D)(4)(d) to encompass "new evidence" is not only in accordance with the plain language of the rule, but that it actually promotes judicial economy by permitting the court to act on the most current information available to it. *See Welch* at ¶ 18; *In re A.S.* at ¶ 14-15. They further reason that such an interpretation of the rule is not subject to abuse by the parties because the trial court remains free to weigh the parties' evidence and testimony to determine if the parties' assertions of fact are credible. *See Welch* at ¶ 18 (rejecting father's argument that all cases will now be subject to widespread abuse, by noting that a trial court considering new evidence is not only entitled to weigh the credibility of the evidence, but also whether the objecting party could with reasonable diligence have presented the evidence to the magistrate).

{¶20} Anne also argues that any changes in Matthew's income could have been addressed by Matthew filing a motion to modify his child-support obligation once the trial court had ruled on the parties' objections and entered its final judgment. But requiring Matthew to file a subsequent motion for modification to reflect his changed income would not be judicially economical, would place form over substance, and would not serve the best interest of the parties' children. *See, e.g., Allen v. Allen*, 2d Dist. Greene No. 2004 CA 32, 2005-Ohio-431, ¶ 25; *Flynn v. Flynn*, 10th Dist. Franklin No. 03AP-612, 2004-Ohio-3881, ¶ 21-23; *In re A.S.*, at ¶ 16; *Morrison v. Morrison*, 9th Dist. Summit No. 27150, 2014-Ohio-2254, ¶ 27 (noting that the passage of time between a magistrate's hearing can allow for a change in circumstances that a party may properly raise through a Civ.R. 53(D)(4)(d) motion).

{¶21} Here, the record reflects that Matthew proffered evidence that he had been terminated from his job during the time between the filing of the parties' objections and the trial court's hearing on those objections. He testified that he could not have anticipated his termination or presented evidence regarding his termination to the magistrate. We conclude that the trial court erred by denying Matthew's motion to present additional evidence without a hearing where his proffer suggests that he could not have produced with reasonable diligence this additional evidence for the magistrate's consideration. *See Morrison* at ¶ 25-28 (holding the trial court erred by failing to consider wife's additional evidence regarding her change of employment prior to its hearing on objections). We take no position on the merits of Matthew's additional evidence, but simply find a hearing was warranted under the circumstances where the trial court is required to consider, after hearing from both Matthew and Anne, whether Matthew could not have produced with reasonable diligence this additional evidence to the magistrate. As a result, we sustain the first assignment of error.

### Authority to Set Child Support

{¶22} In his second assignment of error, Matthew argues the trial court erred in making an order of child support before terminating his spousal-support obligation. He contends the trial court ignored the plain language of the parties' shared-parenting agreement, which prohibits Anne from seeking child support. We disagree.

{¶23} The law of contracts applies to shared-parenting plans. *See Ellsworth v. Ellsworth*, 1st Dist. Hamilton No. C-970916, 1998 Ohio App. LEXIS 6225, *6 (Dec. 24, 1988) (holding that a shared-parenting plan is a contract). In interpreting and enforcing the provisions of a shared-parenting plan, a court must

11

follow the rules of contract construction and interpret the shared-parenting plan to carry out the intent of the parties as evidenced by their contractual language. *See id.*, quoting *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus; *see also Johnson-Wooldridge*, 10th Dist. Franklin No. 00AP-1073, 2001 Ohio App. LEXIS 3319, at *16. If the terms of the shared-parenting plan are unambiguous, the court must give them their plain, ordinary meanings. If the terms of the shared-parenting plan are not clear, however, parole evidence is admissible to explain the meaning of the terms. *See Ellsworth* at *7, citing *Forstner v. Forstner*, 68 Ohio App.3d 367, 372, 588 N.E.2d 285 (11th Dist.1990); *see also Condit v. Condit*, 190 Ohio App.3d 634, 638, 2010-Ohio-5202, 943 N.E.2d 1041, ¶ 11 (1st Dist.). We review de novo the trial court's interpretation of a shared-parenting plan. *Johnson-Wooldridge* at *17.

{¶24} The parties' shared-parenting plan provided:

Based on the respective incomes of the parties and acknowledging Matthew's payment of spousal support, at this time it is agreed that no child support shall be paid by either parent. Based on the respective incomes in each household while spousal support is being paid/received and the time the children will spend with each parent, it is agreed this is just and appropriate and in the children's best interest. Effective upon the termination of spousal support, child support shall be calculated and effective that date of termination of spousal support.

{¶25} A plain reading of the parties' shared-parenting plan does not support Matthew's argument that Anne is prohibited from seeking child support until her spousal support terminates. Instead, the shared-parenting plan expressly

12

provided that, "*[A]t this time*, it is agreed that no child support shall be paid by either parent." (Emphasis added.) The plain meaning of the sentence is that no child support would be paid at the time the plan was entered of record on December 29, 2011.

{¶26} Furthermore, the parties' separation agreement, which was incorporated into their divorce decree and executed at the same time as their shared-parenting plan, outlined three phases of spousal support. During Phases I and II, there was a specific monetary penalty that could have been imposed on Anne had she had sought child support. Given the absence of such a penalty once Phase II had ended, the trial court did not err in concluding that Anne could seek child support at that time. Because Matthew's and Anne's intent was discernible from the plain language of the shared-parenting plan and the separation agreement, the trial court also did not err by failing to consider parole evidence. We, therefore, overrule Matthew's second assignment of error.

### Conclusion

{¶27} In conclusion, we overrule Matthew's second assignment of error, but we sustain his first assignment of error. Our resolution of Matthew's first assignment of error has rendered moot his third, fourth, and fifth assignments of error, in which he challenges the trial court's calculation of his child-support obligation, and his sixth assignment of error, in which he challenges the trial court's order that he pay $8,000 of Anne's attorney fees. We, therefore, affirm the judgment of the trial court in part, reverse it in part, and remand the matter to the trial court for a hearing where the trial court must consider, after hearing from both Matthew and Anne, whether Matthew could not have produced with reasonable diligence the additional evidence to the magistrate.

Judgment affirmed in part, reversed in part, and cause remanded.

**CUNNINGHAM, P.J.,** concurs.
**DEWINE, J.,** concurs separately.

**DEWINE, J.,** concurring separately.

{¶28} I concur with the majority's disposition of the first assignment of error based upon the plain language of Civ.R. 53(D)(4). The evidence didn't exist until after the magistrate's hearing, so Matthew could not have produced it with "reasonable diligence" for the magistrate's consideration.

{¶29} I also concur with the majority's disposition of the remaining assignments of error.

Please note:

The court has recorded its own entry this date.

14