[Cite as *Hidaoui v. Hidaoui*, 2025-Ohio-4784.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| FAITH HIDAOUI, | : | |
| Appellant, | : | CASE NO. CA2025-03-016 |
| vs. | : | <u>OPINION AND</u> <u>JUDGMENT ENTRY</u> 10/20/2025 |
| MAROUANE HIDAOUI, | : | |
| Appellee. | : | |
| | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 22DR43289

DeBra Law, LLC, and Ryan L. DeBra, for appellant.

Kevin D. Hughes, for appellee.

# **O P I N I O N**

**PIPER, P.J.**

{¶ 1}   Appellant, Faith Hidaoui ("Mother"), appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, interpreting the shared parenting plan entered into between her and her ex-husband, appellee, Marouane Hidaoui ("Father"). Mother challenges the trial court's determination that Father has final

decision-making authority with respect to their daughter's medical care. For the reasons outlined below, we affirm the domestic relations court's decision.

**Facts and Procedural History**

{¶ 2} Mother and Father were married on December 30, 2016, in Safi, Morocco. There was one child born issue of the marriage, L.H., born on May 4, 2019. Mother filed a complaint for divorce from Father on April 6, 2022. Father filed an answer and counterclaim for divorce from Mother on May 5, 2022. A one-day hearing was held on the matter on May 23, 2023. On March 12, 2024, the domestic relations court granted the divorce and adopted the shared parenting plan previously entered into by the parties.

{¶ 3} The parties' shared parenting plan provided for all "major decisions" regarding L.H.'s care to be "mutually discussed and agreed upon in advance, provided there [was] no emergency." The shared parenting plan also provided that if there was a "dispute" between Mother and Father over an "issue" with respect to L.H.'s care that it was Father who had the final decision-making authority. The shared parenting plan noted that this would include such things as whether L.H. needed braces, as well as "for doctor's appointments, school events, participation in extracurricular activities, etc."

{¶ 4} On March 22, 2024, Father filed a motion requesting the domestic relations court issue an order providing "clear direction" to Mother that, pursuant to their shared parenting plan, it was Father who had "final medical say so" with respect to L.H.'s medical care. Following a hearing, on August 8, 2024, a domestic relations court magistrate issued a decision granting Father's motion. In so ruling, the magistrate found that, in accordance with the parties' shared parenting plan, "if there is a dispute between the parties, Father shall make the final decision, which includes medical decisions."

{¶ 5} On August 19, 2024, Mother filed an objection to the magistrate's decision. Mother later supplemented her objection to the magistrate's decision on January 16,

2025. To support her objection, Mother argued, among other things, that the magistrate's decision relied upon an "inaccurate interpretation" of the parties' shared parenting plan. This interpretation, according to Mother, incorrectly afforded Father with "the ability to make all medical decisions for the child, even when in conflict with the recommendations of the child's treating physician." Mother's grievance with the domestic relations court's determination is that it effectively removed her "ability to ensure care of the child absent seeking emergency redress by the Court."

{¶ 6} On February 4, 2025, the domestic relations court issued a decision overruling Mother's objection to the magistrate's decision. In so holding, the domestic relations court initially noted that Mother had only four *possible* roles with respect to the decision-making authority for her daughter's care. Those four roles being:

> (1) As the sole residential parent and legal custodian of [L.H.] who is entrusted with the authority to make *all* major decisions that affect her care;
>
> (2) as a non-residential parent who has *no* authority to make any major decisions that affect her care;
>
> (3) as a co-residential parent and legal custodian who communicates well and works together with the child's other parent to *jointly* make major decisions that affect her care; or
>
> (4) as a co-residential parent and legal custodian who has input on all major decisions that affect her care, with one parent afforded final decision-making authority in the event there is a stalemate.

(Emphasis in original.)

{¶ 7} The domestic relations court then noted that, as it related to the facts of this case, the parties' shared parenting plan required Mother and Father to "respectfully discuss their child's medical issues" and "hopefully arrive at a mutually agreeable way to address those issues." The domestic relations court noted that this would include "strong consideration" of the recommendations received from L.H.'s doctor(s). The domestic

relations court also noted, however, that the shared parenting plan expressly provided for Father to have the final decision-making authority if "the parents do not have an agreement" with respect to L.H.'s medical care.

{¶ 8} The domestic relations court noted its disagreement with Mother's claim that Father "does not listen to any of her suggestions regarding [L.H.'s] care," and that Father needed to be stripped of his "final decision-making authority." Explaining its reasoning, the domestic relations court stated:

> For starters, the Court has no evidence that any of Father's "final" decisions have in any way been in contrast to [L.H.'s] best interest. Second, the Court does not see where Mother, either in her words and actions or both, conducts herself in a way that can be considered respectful and helpful and therefore in furtherance of the spirit of the Shared Parenting Plan. Thus, Mother is in no position to be [L.H.'s] sole residential parent and legal custodian or to be the final decision-making parent in a co-parenting relationship unless she can demonstrate her ability and willingness to be calm, considerate, and rational in the way a major decision for [L.H.] needs to be addressed.

{¶ 9} On March 4, 2025, Mother filed a notice of appeal. Mother's appeal was submitted to this court for consideration on September 10, 2025. Mother's appeal now properly before this court for decision, Mother has raised one assignment of error for review.

**Mother's Single Assignment of Error**

{¶ 10} THE TRIAL COURT ERRED IN INTERPRETATION OF THE SHARED PARENTING PLAN BY DEVIATING THE PLAIN LANGUAGE OF THE PLAN AND FINDING THAT THE PLAN ALLOCATED FINAL DECISION-MAKING AUTHORITY TO FATHER ON MEDICAL ISSUES.

{¶ 11} In her single assignment of error, Mother argues the domestic relations court erred in interpreting the parties' shared parenting plan to give Father final decision-

making authority with respect to their daughter's medical care. We disagree.

**Rule of Law and Standard of Review**

{¶ 12} A domestic relations court "has the responsibility to interpret and enforce the provisions in a shared parenting plan adopted by the court in a decree." *Howard v. Howard*, 2000 Ohio App. LEXIS 5394, *4 (12th Dist. Nov. 20, 2000). A domestic relations court does this by following "the rules of contract construction and interpretation so as to carry out the intent of the parties" as "evidenced by the contractual language" set forth within the shared parenting plan at issue. *Burns v. Burns*, 2018-Ohio-2262, ¶ 14 (12th Dist.). This is because, as is now generally well established, "'[a] shared parenting plan is a contract.'" *Id.*, quoting *Johnson-Wooldridge v. Wooldridge*, 2001 Ohio App. LEXIS 3319, *16 (10th Dist. July 26, 2001).

{¶ 13} "'The intent of the parties is presumed to reside in the language they chose to use in their agreement.'" *Simms v. Hupp*, 2023-Ohio-3615, ¶ 17 (9th Dist.), quoting *Graham v. Drydock Coal Co.*, 1996-Ohio-393, ¶ 11. Therefore, where the language used in a shared parenting plan is unambiguous, "then the words must be given their plain, ordinary, and common meaning." *Howard*, citing *Fostner v. Fostner*, 68 Ohio App.3d 367, 372 (8th Dist. 1990). This court reviews de novo a domestic relations court's interpretation of the language used in a shared parenting plan. *Maddox v. Maddox*, 2016-Ohio-2908, ¶ 23 (1st Dist.); *Harbottle v. Harbottle*, 2002-Ohio-4859, ¶ 43 (9th Dist.).

**Analysis**

{¶ 14} Upon review, we find the language used in the parties' shared parenting plan to be unambiguous. That is to say, despite Mother's claims otherwise, we find the shared parenting plan plainly provides that, if there is a "dispute" between Mother and Father over an "issue" with respect to L.H.'s care, it is Father who is afforded with final decision-making authority. This includes Father being afforded with the final decision-

making authority over any medical decisions that may need to be made for L.H. This would include, for instance, Father having final decision-making authority as to whether L.H. needed braces. This also includes whether L.H. would be vaccinated.

{¶ 15} Father, however, is not to make any medical decisions with respect to L.H. without first consulting with Mother, provided there is no emergency. Father is also not to make any medical decisions for L.H. without first taking into consideration the recommendations offered by L.H.'s doctor(s). This is because, as the parties' shared parenting plan plainly states, Father is afforded with final decision-making authority only after "mutually" discussing the matter with Mother and only if there is a "dispute" between Mother and Father over an "issue" with respect to L.H.'s care. Therefore, while it is clear that Mother clearly loves and wants only the best for L.H., we find no error in the domestic relations court's decision because the parties' shared parenting plan clearly and unambiguously gives Father final decision-making authority with respect to their daughter's medical care.

## Conclusion

{¶ 16} For the reasons outlined above, and finding no error in the domestic relations court's decision, Mother's single assignment of error is overruled. Therefore, having now overruled Mother's single assignment of error, Mother's appeal challenging the domestic relations court's decision is denied.

{¶ 17} Judgment affirmed.

M. POWELL and SIEBERT, JJ., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge


/s/ Mike Powell, Judge


/s/ Melena S. Siebert, Judge