DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights. Because we conclude that the trial court did not err in its determinations, we affirm.
 {¶ 2} Appellant, Wayne G. ("father"), is the biological father of twin boys, Wayne G. and William G., born in 2002. In 2004, father had custody of the twins. In *Page 2 
February 2005, Lucas County Children's Services ("LCCS"), filed a complaint in dependency and neglect and took temporary custody of the twins. The complaint alleged that mother had substance abuse issues and father chose "inappropriate" supervisors for the children, in violation of court orders "regarding prohibited contact." The twins were adjudicated to be dependent and neglected, and temporary custody was granted to LCCS.
 {¶ 3} Case plans for father and mother, who were living separately, were implemented with the goal of reunification. Mother, with a 20 year history of drug and alcohol abuse, did not complete the recommended programs, and continued to have substance abuse problems. Father, however, engaged in and completed recommended services. In a judgment entry issued on April 5, 2006, the court awarded legal custody of the twins to father, effective as of February 2, 2006. The court further ordered that mother's visitations "shall" be supervised at a Children's Rights Center.
 {¶ 4} On March 19, 2007, LCCS filed a second complaint, alleging dependency and neglect, and requesting an emergency shelter care hearing and permanent custody. This complaint alleged that in July 2006, father had left both boys in the custody of mother without court approval. The complaint further alleged that father claimed that he had left the children with his girlfriend, Tyshanna B., when he left in January 2006, to attend basic training in the United States military in Houston, Texas. LCCS alleged that witnesses at an agency staffing on March 16, 2006, verified that they personally knew or witnessed father directly giving the children to mother. *Page 3 
 {¶ 5} During the adjudicatory hearing, an LCCS caseworker stated that during the previous case and after the judgment entry was issued, father was admonished about leaving the children with inappropriate supervision, and specifically, that he was not to leave them with mother. The caseworker also testified that mother had told her that the children had been with her since July 2006. Father denied knowing that the children had been left with mother.
 {¶ 6} Father's explanation was that he had left the children with Tyshanna B., who had then left them with an inappropriate caregiver. He said that he and Tyshanna had a "spat" on the telephone in February or March 2006, while he was in Houston at basic training. Father then opined that she must have left the children with mother to "get back at" him. He stated that after the spat, Tyshanna moved to Columbus, Ohio, that he did not know her new address, and that he had not spoken with her much since the spat. He again denied, however, that he knew that the children had been taken to mother, stating that the first he had heard of it was when he received the LCCS complaint in March 2007.
 {¶ 7} After hearing testimony from the LCCS caseworker, the children's foster mother (mother's cousin), and father, the court found the children to be dependent. Further testimony by LCCS caseworkers was then presented during the disposition hearing. Evidence was again presented that, since the agency's involvement in 2004, despite orders to the contrary, father had often left the children with inappropriate caregivers, including mother who had a 20 year substance abuse problem. Despite *Page 4 
agency efforts to prevent the recurrence of these issues, mother had reported to the caseworker that she had the children unsupervised at various times throughout the summer of 2004. The caseworker also testified that from 2004 to 2006, father had also often left the children with girlfriend, Tyshanna B., who then either left them with other people, including mother, or would call the agency to say that she could no longer take care of them. When father regained custody in 2005, the agency believed that these issues had been resolved. Since the agency discovered the children again in mother's care, without court approval, it believed that father simply could not or would not stop leaving the children with inappropriate persons.
 {¶ 8} On disposition, the court granted permanent custody to LCCS, and further found that the agency made reasonable efforts to prevent the children's removal from the parents. The court found that R.C.2151.414(E)(1), (4) and (16) applied to father. Specifically, the court stated, "Quite frankly, I don't believe it when you said — when you testified that you didn't know that the children were with their mother. And I don't — I didn't believe you and your explanation of the circumstances regarding where the children were staying. * * * The reality is that they've spent more than I think — I think almost more than half their life [sic] not with their parents but with other people."
 {¶ 9} Father now appeals that judgment, arguing the following two assignments of error:
 {¶ 10} "A. The trial court erred because evidence was insufficient to support a finding that the children were neglected. *Page 5 
 {¶ 11} "B. The trial court erred when it found reasonable efforts were made by appellee to prevent the permanent removal of the children."
 I. {¶ 12} In his first assignment of error, father contends that the trial court erred in finding the children to be neglected.
 {¶ 13} In this case, in the July 16, 2007 judgment entry which entered the adjudicatory findings, the trial court found the children to be "dependent." Since the trial court never made a finding of neglect, we conclude that father's claim is without merit.
 {¶ 14} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 15} In his second assignment of error, father claims that the trial court erred in finding that LCCS made reasonable efforts to prevent the permanent removal of the children.
 {¶ 16} There are two avenues by which an agency can obtain permanent custody of a child: (1) by requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353 or (2) by filing a motion under R.C. 2151.413 after obtaining temporary custody. When a child services agency files a complaint for permanent custody pursuant to R.C.2151.353, unless covered by the exceptions under R.C. 2151.419(A)(2), the trial court must determine whether the agency made reasonable efforts to prevent the continued removal of the children from the home before granting permanent custody to the agency. See R.C.2151.419(A)(1); In re Wright, 4th Dist. No. 01 CA2627. *Page 6 
 {¶ 17} In this case, LCCS filed an original complaint for permanent custody pursuant to R.C. 2151.353. Therefore, the reasonable efforts statute, R.C. 2151.419, is applicable. Since the trial court did, however, find that the agency, in fact, satisfied the statutory reasonable efforts requirement, we must now determine whether that finding was supported by the record.
 {¶ 18} A trial court's reasonable efforts finding must be supported by clear and convincing evidence. R.C. 2151.414(B). Thus, such findings will not be overturned as against the manifest weight of the evidence, if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re Alyssa C, 153 Ohio App.3d 10, 2003-Ohio-2673, ¶ 13, citing to In re Forrest S. (1995), 102 Ohio App.3d 338, 345 andCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 19} In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers, 4th Dist. No. 02CA50, 2003-Ohio-2776, at ¶ 18. A "reasonable effort" is "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992),79 Ohio App.3d 59, 63.
 {¶ 20} In this case, when LCCS first removed the twins in 2005, the issues listed included father leaving the children with inappropriate supervision. The agency provided *Page 7 
a case plan that included reunification as the goal. Father was offered and completed recommended services. When he received custody in 2006, father was clearly aware that mother was never to have the children in her custody without appropriate supervision.
 {¶ 21} Despite this clear condition, however, after father left for basic training, the children again were left with mother. Nothing in the record indicates that mother's condition or substance abuse issues had changed by July 2006. The record does show, however, that, on multiple prior occasions, father either directly left the children with inappropriate supervision or with mother. Father claimed, in each instance, that he did not know that the children had been left with mother. Our review of the record supports the trial court's finding that father either knew that the children were with the mother, or, at the very least, he used extremely poor judgment in leaving them with persons who would choose to give them back to a mother who was a known substance abuser.
 {¶ 22} In addition, contrary to father's contentions, whether the children's physical needs were being met at the time of removal is not relevant to whether father took appropriate steps to ensure his children's safety while he was away in the military. Despite father's claims to have executed paperwork to provide for an appropriate caregiver, no evidence of any attempts or paperwork was offered into evidence. The potential substitute custodian, the foster mother, testified that father did not send her any documents which would have given her custody or power of attorney, as he claimed.
 {¶ 23} The trial court's determinations in this case were largely based upon credibility of the witnesses. At the end of the adjudication hearing, the court stated "The *Page 8 
Court finds that [father] has given a number of explanations as to what arrangements he did make regarding the children's care while he was serving with the — in Texas, which I find are inconsistent and not believable explanations or arrangements. And I heard no credible testimony that adequate arrangements were, in fact, made by [father] to care for his sons while he was in Texas serving." In other words, the trial court did not believe that appellant did everything he could to make sure his children were left with an appropriate caregiver.
 {¶ 24} Consequently, despite father's previous success in obtaining custody under the first case plan set up by LCCS, after the children were returned, he again repeated the same mistakes and used poor judgment regarding supervision.
 {¶ 25} Furthermore, the record indicates that the same inappropriate behavior which occurred between father and mother in the past was very likely to continue in the future. Under the circumstances of this case, LCCS was not required to start at "square one," with a completely new case plan and reunification as a goal or to provide additional services to father in order to satisfy the reasonable efforts requirement. The "reasonable efforts" extended back to 2005, when the agency first attempted to reunify the children with father. Therefore, the trial court's determination that LCCS had made reasonable efforts to prevent the children's removal was supported by competent, credible evidence.
 {¶ 26} Accordingly, father's second assignment of error is not well-taken.
 {¶ 27} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to *Page 9 
App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1