[Cite as *In re K.S.*, 2020-Ohio-6863.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: K.S.

:        APPEAL NO. C-190754
         TRIAL NO. F16-2613

:        *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 23, 2020

*Stagnaro Hannigan Koop, Co., LPA,* and *Michaela M. Stagnaro,* for Appellant-Mother,

*Berry & Karl, LLC,* and *Kristie A. Karl,* for Appellee-Father.

**CROUSE, Judge.**

{¶1} Mother appeals the decision of the Hamilton County Juvenile Court, adopting the shared-parenting plan proposed by father. For the reasons set forth below, we affirm the judgment of the juvenile court.

### I. Facts and Procedure

{¶2} Mother and father are the parents of K.S., born on February 28, 2014. Mother and father were in a relationship from February 2013 to April 2016. The parties were never married.

{¶3} On December 12, 2016, father filed a petition for visitation. Father alleged that mother had restricted his access to K.S. On January 3, 2017, mother filed an opposing petition for custody of K.S. Father then filed a petition for shared parenting in January 2017, and again in August 2017.

{¶4} Prior to trial, the parties stipulated that shared parenting was in the best interest of K.S. Both parents submitted proposed shared-parenting plans. The parties differed on the parenting-time schedule, the right of first refusal for holiday time, the use of extended/vacation time, and additional parenting time for "special life events."

{¶5} Trial was conducted on nine different days, spanning over the course of 13 months. On June 10, 2019, the magistrate issued a written decision adopting the shared-parenting plan proposed by father. Mother filed timely objections to the decision. Following a hearing on the objections, the juvenile court adopted the magistrate's decision with one modification. This timely appeal followed.

## II. Law and Analysis

{¶6} In her sole assignment of error, mother argues that the juvenile court erred in determining the parenting-time schedule and the conditions under which parenting time takes place.

{¶7} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Therefore, we review the juvenile court's decision for an abuse of discretion. *Id.*; *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 41. An abuse of discretion exists only if "the court's decision regarding the child's best interests is not supported by competent, credible evidence." *In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, ¶ 11.

### A.

{¶8} As a preliminary matter, mother challenges the juvenile court's refusal to hear additional evidence related to changes in the parties' work schedules.

{¶9} The juvenile court generally has broad discretion in deciding whether to hear additional evidence. *See* Juv.R. 40(D)(4)(d). However, Juv.R. 40(D)(4)(d) limits the court's discretion when "new evidence" arises after the magistrate's decision, but before the juvenile court's hearing on the objections. *Maddox v. Maddox*, 2016-Ohio-2908, 65 N.E.3d 88, ¶ 18-19 (1st Dist.). Juv.R. 40(D)(4)(d) provides:

In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶10} Thus, Juv.R. 40(D)(4)(d) requires the court to accept additional evidence if the objecting party demonstrates that, with reasonable diligence, it could not have produced the evidence for the magistrate's consideration. *Maddox* at ¶ 14. "[T]he crux of the analysis is whether the party was put on notice that they would be reasonably expected to introduce the evidence at the hearing before the magistrate. * * * If the party had notice that they would be reasonably expected to introduce evidence on the subject, then the trial court has discretion to accept or reject that evidence." (Internal citations omitted.) *Id.*

{¶11} Mother contends that she could not have produced evidence of changes to the parties' work schedules for the magistrate's consideration because the changes occurred after the time of trial. Mother argues that this evidence was relevant to the allocation of parenting time under the parenting schedule. However, it is clear that mother anticipated these changes and presented evidence of such before the magistrate.

{¶12} In her objections, mother alleged that her work hours changed from 12-hour day shifts (10:30 a.m. to 11:00 p.m.) to traditional day shifts (8:00 a.m. to 5:00 p.m.). However, mother always maintained that her work schedule would change upon completion of her advanced education. In fact, it was mother's position

4

at trial that her future work schedule would allow her to best provide for K.S.'s needs while father's inconsistent work schedule made it difficult for him to provide structure and stability for K.S.

{¶13} Although mother did not have a job offer at the time of trial, she adamantly insisted that the change in schedule was not speculative. Mother "guaranteed" that she would be offered "an office-type job Monday through Friday, like an eight to four-type." Mother even fashioned her proposed parenting schedule to accommodate the anticipated work schedule, stating "I'll be able to spend more time with him in the evening, * * * I can focus on [K.S.] and his best interest with the work schedule that I will be having in the future." Therefore, the change in mother's work schedule was not "new evidence" that could not have been produced for the magistrate's consideration.

{¶14} In her objections, mother also alleged that father's work schedule changed to a third-shift schedule. However, at the time of trial, father was already working overnight shifts. A review of the record shows that father's schedule alternated between 12-hour night shifts and 8-hour night shifts. Father testified that he predominately worked 12-hour shifts (from 6:15 p.m. to 6:45 a.m.) with one 8-hour shift (from 10:45 p.m. to 6:45 a.m.) every other week. Therefore, the fact that father worked overnight hours was not "new evidence" that could not have been produced for the magistrate's consideration.

{¶15} Because mother could not demonstrate an inability to produce evidence related to changes in the parties' work schedules before the magistrate, the juvenile court had discretion to accept or reject that evidence. Under these circumstances, we cannot find that the juvenile court abused its discretion when it refused to hear mother's additional evidence.

B.

{¶16}   Mother's remaining arguments pertain to the juvenile court's decision to adopt father's proposed shared-parenting plan almost in its entirety.  Mother argues that the allocation of parenting time and the conditions under which parenting time takes place, including a right of first refusal and use of extended parenting time, are not in the best interest of K.S.

{¶17}   R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of a child, including shared parenting.  R.C. 3109.04 instructs the court to consider the best interest of the child when allocating parental rights and responsibilities.  In determining the best interest of the children, the juvenile court must consider all relevant factors, including, but not limited to:

(a) "[t]he wishes of the child's parents regarding the child's care";

(b) "the wishes and concerns of the child";

(c) "[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest";

(d) "[t]he child's adjustment to the child's home, school, and community";

(e) "[t]he mental and physical health of all persons involved";

(f) "[t]he parent more likely to honor and facilitate court-approved parenting time rights";

(g) "[w]hether either parent has failed to make all child support payments";

(h) "[w]hether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal

6

offense involving any act that resulted in a child being an abused child or a neglected child";

(i) "[w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time";

(j) "[w]hether either parent has established a residence, or is planning to establish a residence, outside this state."

R.C. 3109.04(F)(1).

{¶18} Here, the juvenile court determined that both parties are loving, devoted, and capable parents of K.S. There were no concerns of substance abuse, criminal activity, or other similar issues. In addition, neither party planned to move outside the state. Thus, the main points of contention were the parties' wishes and the parties' inability to communicate with each other.

{¶19} With respect to the parties' wishes, the juvenile court found that both parents wanted to play a significant role in K.S.'s life. Mother wanted K.S. to spend the majority of his time with her. Mother claimed that K.S. was well adjusted to her home and was severely distraught after father's parenting time increased. Mother's proposed schedule recommended that mother have K.S. every Monday, Wednesday, Thursday, and Friday.

{¶20} Contrary to mother's allegations, the juvenile court found "no objective reasons to limit the child's contact with his father." Instead, the court found that K.S. was "well adjusted to the homes of both parents." A review of the record shows competent, credible evidence supports the court's finding. K.S.'s paternal aunt and paternal grandmother testified that K.S. was "a happy little boy" during father's parenting time. The guardian ad litem also testified that K.S. was very relaxed and

7

comfortable at father's home. In addition, K.S.'s daily school reports did not detail any behavioral issues after father's parenting time increased. In light of the credibility of the witnesses and corroborating evidence from the school, the court determined that mother's allegations against father were not supported by credible evidence.

{¶21} On the other hand, father wanted K.S. to spend equal time with both parents. Father's proposed schedule (and the one adopted by the court) was a two-week rotating schedule based on the parties' work schedules. Father's schedule recommended that father have K.S. on Monday, Tuesday, Wednesday, Saturday and Sunday in week one, and on Thursday and Friday in week two. However, mother took issue with father working during his parenting time.

{¶22} Father testified that if he had to work during parenting time, then his mother would care for K.S. The juvenile court found that K.S. was very involved with the members of his paternal family. The record shows that K.S. was bonded with his paternal grandmother. The record also shows that K.S. was bonded with father's two older children, his paternal siblings. According to father, K.S. is "pretty much attached" to his brother. Based on these circumstances, the juvenile court determined that it was in K.S.'s best interest to spend as much time as possible with both families.

{¶23} With respect to the parties' ability to communicate, the juvenile court found that mother had "a palpable hatred" toward father. The court described mother's communications as "nasty and disrespectful." The court continued, "She addresses [father] as though he is her child rather than a co-parent." At trial, mother admitted that she did not like father and did not want to communicate with father. The testimony showed that the parties had engaged in settlement negotiations, participated in

mediation, attended therapy sessions, and tried to address concerns through Our Family Wizard—all to no avail.

{¶24} Based on the lack of effective communication, the juvenile court required parenting time to take place under conditions with the least potential for conflict, i.e., the least amount of communication. Mother wanted a right of first refusal for holidays, a requirement that the parent take time off work to exercise extended parenting time, and a requirement that both parents agree to vacation days divided into less than one-week blocks. However, the court determined that such conditions required extensive communication between the parties and "may cause unnecessary conflict * * * that would not be in the best interest of the child."

{¶25} For the same reasons, the court adopted father's "special life event" language with some modification. The "special life event" clause provided: "A Special Life Event shall override the 'weekly' and 'holiday' time allocation in this Plan[.] * * * 'Special Life Event' is defined as the wedding, funeral or graduation of the child's parent, sibling, grandparent, aunt, uncle or first cousin."

{¶26} The court believed this provision would "allow [K.S.] to participate in important events in both families' lives without causing conflict between the parties." The court found no evidence that mother would facilitate a relationship between K.S. and father on her own volition. Rather, the court found that mother had "gone to extensive lengths to alienate [K.S.] from his father." For example, the record shows that mother did not want K.S. to attend his paternal sister's elementary school graduation because it conflicted with his weekly swimming lessons. Consequently, the juvenile court tailored and limited the "special life events" language to avoid unnecessary conflicts between the parties.

{¶27} Based on the evidence presented, the juvenile court determined that it was in K.S.'s best interest to spend as much time as possible with both parents. The court also determined that it was in K.S.'s best interest to have minimal conflict between the parties. The court appropriately considered and applied the factors listed in R.C. 3109.04(F)(1) in making those determinations. Under these circumstances, we cannot hold that the juvenile court's decision constitutes an abuse of discretion.

{¶28} We accordingly overrule mother's sole assignment of error.

### III. Conclusion

{¶29} Because we find that the juvenile court did not abuse its discretion in adopting father's shared-parenting plan, we affirm.

Judgment affirmed.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.