[Cite as *In re M. Children*, 2022-Ohio-673.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: M. CHILDREN | : | APPEAL NO. C-210470<br>TRIAL NO. F04-2095-Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 9, 2022

*James J. Whitfield*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Julia Wood*, for Guardian ad Litem for the M. Children.

**WINKLER, Judge.**

{¶1} Appellant father appeals the judgment of the juvenile court terminating his parental rights and awarding permanent custody of three of his children to Hamilton County Department of Job and Family Services ("HCJFS"). For the reasons that follow, we affirm.

## Background

{¶2} J.A.M., born in September 2006, T.D.M., born in November 2009, and J.M., born in August 2012, (collectively referred to as "the M. children") lived with their maternal great-grandmother essentially since their respective births, because their biological mother and father had substance-abuse issues. In October 2018, HCJFS sought temporary custody of the M. children, as well as an older sibling who is not the subject of this appeal, D.M. HCJFS sought temporary custody because the M. children's great-grandmother allowed mother to live in the home and abuse drugs, and at one point mother overdosed in the home. The children also had not been receiving adequate care.

{¶3} HCJFS filed a motion to modify temporary custody to permanent custody in August 2020. During this time, father entered the M. children's lives on a more consistent basis. Father began participating in visitation, case management, random drug screens, and parenting classes. Father eventually demonstrated a pattern of sobriety. In December of 2020, HCJFS placed the M. children on extended visitation with father. Because reunification with father appeared possible, HCJFS filed a motion to award custody to father in March 2021.

{¶4} Things took a turn for the worse shortly after HCJFS moved to award custody to father. The M. children's maternal great-grandmother passed away, and although HCJFS had been supporting father and the children with intensive in-home providers three to four times a week and food stamps, father struggled to meet the needs of the children. The children had not been attending school on a regular basis, and J.A.M. reportedly went missing for a period of time from father's home. Some of the children disclosed that father had been using drugs again, and the children had not been receiving their mental-health medication.

{¶5} HCJFS terminated father's extended visitation with the M. children and withdrew its motion to award custody to father. T.D.M. and J.M. were placed back into foster care, and J.A.M. was eventually placed in a group home. HCJFS reinstituted random drug screens for father, and father missed two of the three random screens that HCJFS scheduled between March and June 2021. Father then tested positive for cocaine just days prior to the permanent-custody hearing.

{¶6} At the permanent-custody hearing, father's counsel indicated that father did not want to be present for the hearing because of his emotional state. Counsel requested a continuance. The juvenile court suggested that father could participate virtually via Zoom, but counsel relayed that father did not desire to do so. The juvenile court denied father's motion for a continuance, and father's counsel proceeded on father's behalf to object to permanent custody.

{¶7} The HCJFS caseworker was the sole witness to testify at the permanent-custody hearing. The caseworker testified that she had concerns regarding father's recent drug relapse. The caseworker also had concerns regarding father's financial instability, and father's ability to manage the children, particularly

3

J.A.M. At the time of trial, J.A.M. had been removed from his foster care placement and placed in a group home. J.A.M. allegedly had been using marijuana and had been involved in gang activity. The record reflects that father may not have desired custody of J.A.M., because of his challenging behaviors.

{¶8} The report filed by the children's guardian ad litem ("GAL") indicated that the children did not wish to live with father. T.D.M. and J.M. were in supportive foster homes, and although they were not in the same home, their foster parents are related and allow the siblings to see each other on a weekly basis.

{¶9} The juvenile court granted HCJFS's motion for permanent custody. The juvenile court determined that father had over a decade to make the necessary changes in his life to parent the children. Given father's criminal history and substance-abuse issues, his inability to adequately supervise the children, and the children's own issues, the juvenile court determined that father would not be a suitable custodial placement. As a result, the court determined that permanent custody was the only option for the M. children and in the children's best interest.

**The Denial of Father's Request for a Continuance**

{¶10} In his first assignment of error, father argues that the juvenile court erred in denying his motion for a continuance and holding a permanent-custody hearing without his presence.

{¶11} An appellate court reviews a decision to deny a continuance in a permanent-custody case for an abuse of discretion. *In re A.U.*, 10th Dist. Franklin No. 20AP-594, 2021-Ohio-2658, ¶ 11.

{¶12} At the permanent-custody trial, father's counsel indicated that father would not be attending the hearing because he was frustrated by the recent case

developments. Father was frustrated particularly by the GAL's report indicating that the children no longer wished to live with him. The juvenile court allowed counsel to contact father to see whether he would participate virtually via Zoom, but father declined. Father's counsel requested a continuance on father's behalf and argued that the GAL's report had been filed untimely.

{¶13} The record reflects that father had notice of the hearing, but father did not want to participate—even virtually—because of his emotional state. Father gave no indication of when he might be willing to participate. As to the late-filed GAL report, Sup.R. 48.06(B)(1) requires the GAL to provide a written report no less than seven days prior to the permanent-custody hearing, but the juvenile court can alter that requirement as needed for the administration of justice. Father's counsel objected to the late filing of the GAL report, but counsel did not indicate that he had not read the report, or that he was not otherwise prepared for trial. *See In re M.S.*, 2015-Ohio-1847, 34 N.E.3d 420, ¶ 38 (8th Dist.) (no error in proceeding with a permanent-custody hearing where GAL filed a report three days prior to trial, and father did not argue that he was prejudiced by the untimely submission). Moreover, father's counsel indicated that he would move forward with representing father's interests at trial. Based on this record, we determine that father has not shown that the juvenile court abused its discretion in refusing to grant him a continuance.

{¶14} Because the juvenile court did not abuse its discretion in denying father's request for a continuance, we overrule father's first assignment of error.

### Permanent Custody

{¶15} In his second assignment of error, father argues that the juvenile court erred in granting permanent custody of his children to HCJFS, because the record

does not support that HCJFS used reasonable efforts to preserve or maintain the family unit.

{¶16} A juvenile court can grant permanent custody of a child to a children's services agency if it finds by clear and convincing evidence that the child has been in the custody of the children's services agency for at least 12 months of a consecutive 22-month period, and that permanent custody is in the best interests of the child. *See* R.C. 2151.414(B)(1)(d).

{¶17} In determining whether permanent custody is in the best interests of the child, the juvenile court must consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]

R.C. 2151.414(D)(1).

6

{¶18} This court must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard, or, alternatively, whether the juvenile court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed. *In re A.W.*, 1st Dist. Hamilton No. C-210420, 2021-Ohio-3914, ¶ 16.

{¶19} Father does not directly attack any of the best-interest findings made by the juvenile court, but instead argues that HCJFS failed to make reasonable efforts to keep the children in his home.

{¶20} Except in certain circumstances, a children's services agency has an ongoing duty to make reasonable efforts to preserve or reunify the family unit. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29. R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has made reasonable efforts to eliminate the continued removal of the children from their home. "Reasonable efforts" means "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed." (Citation omitted.) *In re C.F.* at ¶ 28. Father did not object to the reasonable-efforts determination below, so this court reviews his argument for plain error. *In re L.R.*, 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 18.

{¶21} Father argues that HCJFS failed to make reasonable efforts to maintain the children in his home because HCJFS removed the children within two weeks of receiving unverified allegations that father had been using drugs. The record does not support father's argument. At the permanent-custody hearing, the HCJFS caseworker testified that the agency had provided food stamps and intensive in-home therapy services to father throughout his extended visitation. Nevertheless,

father struggled financially and with managing the children. The HCJFS caseworker received some reports from the children that father had been using and selling drugs out of the home. HCJFS requested that father undergo a drug test, and father did not comply.

{¶22} The M. children have been in the custody of HCJFS for more than the required 12-of-22 period, and have been in a state of custodial flux since birth. The children have witnessed their mother's drug use, have missed significant amounts of school, have dealt with untreated mental-health issues, and at times lacked adequate food in the home. While the record reflects father's love for his children, father did not become a parent figure until 2020. Father struggled to manage the children while they had extended visitation with him, even with intensive assistance from HCJFS. At the time of trial, father suffered a drug relapse. The GAL report reflects that the children no longer wish for their father to have custody of them.

{¶23} HCJFS used reasonable efforts to maintain the family unit, and the juvenile's court decision granting permanent custody of the M. children to HCJFS is supported by sufficient evidence, and is not otherwise against the manifest weight of the evidence. Therefore, we overrule father's second assignment of error.

**Conclusion**

{¶24} We affirm the judgment of the juvenile court granting permanent custody of the M. children to HCJFS.

Judgment affirmed.

**BERGERON, P.J.,** and **BOCK, J.,** concur.

Please note:

8

The court has recorded its own entry on the date of the release of this opinion.