[Cite as *In re J.L.*, 2022-Ohio-2885.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: J.L., N.L., A.L., N.L., J.L.  :  APPEAL NO. C-210586
TRIAL NO. F17-1822

:

:  *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 19, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*ProKids* and *Jeffery A. McCormick*, for the Guardian ad Litem for the minor children.

*Thomas W. Condit*, for Appellants Mother and Father.

**BERGERON, Judge.**

{¶1} Appellants mother and father appeal a judgment granting temporary custody of their five minor children to appellee the Hamilton County Department of Job and Family Services ("HCJFS"). The parents insist that the record does not support the disposition and that the juvenile court failed to hear additional evidence before entering its judgment. We disagree, however, and affirm the judgment of the juvenile court.

I.

{¶2} Mother and father are the biological parents of five minor children (J.L.1, N.L.1, A.L., N.L.2, and J.L.2). In 2013, the parents were charged with child endangerment related to the conditions of their home, but ultimately pleaded guilty to disorderly conduct. The trial court ordered the parents to comply with HCJFS directives as a condition of community control. Then, in September 2017, the children were adjudicated neglected and dependent after N.L.2, who was two years old at the time, was found roaming the neighborhood unsupervised. The children were returned to the parents' custody in January 2018.

{¶3} This case arose in January 2020, after police found J.L.2—a four-year-old at the time with extensive special needs—wandering around the family's neighborhood unsupervised. A subsequent investigation revealed that (1) the children had not been seen by a non-emergency medical professional for over two years, (2) the children had severe lice and pinworms, (3) J.L.1 had a fishhook in her ear canal that had been there for an extended period, (4) A.L. required ear surgery for adenoid removal, (5) four out of the five children needed glasses but had not been taken for a vision exam, (6) the children were not enrolled in a homeschool program although the parents claimed that they homeschooled the children, (7) all of the children had significant educational and developmental delays, and (8) all of the children needed an Individualized Education Plan ("IEP"). As a result of this investigation,

2

the children were placed in the emergency custody of HCJFS. The children were eventually adjudicated neglected and dependent in September 2020.

{¶4} HCJFS developed a case plan to facilitate reunification that consisted of a diagnostic assessment of functioning, psychological evaluation, individual counseling, parenting education, visitation, family therapy, and a parenting psychological assessment. At disposition, the parents had not completed a parenting psychological evaluation and were not engaged in family therapy, but they otherwise completed the case plan services HCJFS provided. The magistrate nevertheless granted temporary custody of the children to HCJFS finding that the parents have failed to demonstrate insight into the needs of their children. The juvenile court adopted the magistrate's decision, and this appeal followed.

II.

{¶5} Parents present three assignments of error in this appeal. Their first targets the temporary custody decision of the juvenile court, and parents begin by framing the matter as a question of constitutional concern—whether the grant of temporary custody violated their fundamental right to raise their children under the Due Process Clause of the Fourteenth Amendment.

{¶6} Due process requires the state to establish a compelling government interest before depriving parents of their fundamental right to raise their children. *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶39-40, citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The juvenile court granted temporary custody of the children to HCJFS under R.C. 2151.353(A)(2). That provision authorizes the juvenile court to grant temporary custody of abused, neglected, or dependent children to HCJFS "if the court finds that this disposition is in the child[ren]'s best interest." *In re M.M.*, 2d Dist. Montgomery Nos. 27722 and 27724, 2018-Ohio-2034, ¶ 25, citing R.C. 2151.353(A)(2). Ohio courts recognize (and parents do not seriously dispute) that

3

the state has a compelling government interest in obtaining custody of abused, neglected, or dependent children when such a disposition is in the children's best interests. *In re M.D.,* 10th Dist. Franklin No. 07AP-954, 2008-Ohio-4259, ¶ 17 ("The award of temporary custody in this case does not violate appellant's constitutional due process rights because: (1) the child has been adjudicated a dependent child, (2) appellant has been implicitly determined to be unsuitable by that adjudication, and (3) the juvenile court determines that such an award is in the child's best interest."); *In re B.C.,* 9th Dist. Summit No. 23044, 2006-Ohio-3286, ¶ 14 ("The State's procedure, therefore, which permits an award of temporary custody to CSB upon a finding that such an award is in the best interests of the child is narrowly tailored to serve the State's compelling interest in protecting children from abuse, neglect, and dependency."). Moreover, parents do not facially challenge the constitutionality of R.C. 2151.353(A)(2) or any other applicable provision of Ohio law.

{¶7} Although the contours of their constitutional argument are ill-defined, we interpret it as essentially an as-applied challenge. But even this, as framed by parents, ultimately becomes indistinguishable from the state law statutory argument. In other words, if the juvenile court complied with Ohio law when it granted temporary custody to HCJFS, then the grant of temporary custody would not violate the parents' constitutional right to raise their children. At the least, we see no independently viable due process argument developed in their appellate brief.

{¶8} But here's the problem—parents never directly challenge the state law "best interests" determinations reached by the juvenile court. To be sure, they resist the trial court's conclusions and cast aspersions about them, but more must be done to preserve the argument for appellate review. *See* App.R. 16(A)(7) ("The appellant shall include in its brief, under the headings and in the order indicated * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in

support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). Nor can a party simply toss constitutional labels around without developing the argument—we cannot fashion the argument ourselves.

{¶9} We believe that much of parents' ire can be traced to a seeming inconsistency in the juvenile court's findings. The juvenile court recognized that "the parents have made substantial progress in the case plan services," which echoes conclusions of the magistrate, who commended the measures taken by the parents to remedy past problems, to attend medical appointments, and to broaden their insights into their children's needs. Notwithstanding the juvenile court's observation, it held that "the parents still lack insight into the particular needs of their children." In parents' view, the incongruity of these conclusions leaves them flummoxed, and not knowing what they need to do to regain custody of their children. We appreciate their frustrations, and the juvenile court could have elaborated in more detail on this point to ensure that the parents understood, specifically, what they need to do (given their progress to date) to regain custody.

{¶10} Parents, however, do not challenge any factual findings within their first assignment of error. Nor do they question the adjudication of their children as neglected or dependent. "After a child is adjudicated abused, neglected, or dependent, the juvenile court may make any of the orders of disposition provided for in R.C. 2151.353(A)(1)-(6). A juvenile court has broad discretion in this disposition." *In re V.D.*, 2d Dist. Montgomery No. 29366, 2022-Ohio-1877, ¶ 20. " 'In choosing among the alternatives, the best interest of the child is the court's primary consideration.' " *Id.*, quoting *In re L.C.*, 2d Dist. Clark No. 2010-CA-90, 2011-Ohio-2066, ¶ 13. Without any specific challenge to the best interest determination by the juvenile court, we must presume its correctness. And with that foundation, any constitutional claim (as framed by parents here) inevitably collapses.

{¶11} Nevertheless, parents claim that the juvenile court never observed a threat to the welfare of their children. That's not how we read the record.

{¶12} The record contains evidence that the children's medical and educational needs may be imperiled if returned to the parents' custody. For instance, the parents concede that they refused to consent to A.L.'s ear surgery, and the record reflects that the court ultimately ordered it to be performed roughly one year after HCJFS assumed custody of the children. Without the ear surgery, A.L.'s hearing grew so impaired that his teachers had to use a microphone to communicate with him, a point which seemed to impede his learning, given that he only knew three letters of the alphabet at the time. Parents have refused to acknowledge that this decision negatively impacted A.L.'s hearing and education.

{¶13} Parents have also resisted the implementation of IEPs to address the children's needs even though record establishes that the three youngest children had speech delays, the second oldest child presented as illiterate despite being in the second grade, and the oldest child fell one year behind in schooling. J.L.2's delays are particularly troubling. Cincinnati Children's Hospital recommended that he participate in speech, occupational, physical, and behavioral therapy services through the hospital. Mother nevertheless insisted that J.L.2 did not require an IEP and resisted his participation in these services. An employee for the hospital expressed apprehension that J.L.2 would not receive these services if returned to the parents' custody. The guardian ad litem ("GAL") echoed the point, relaying her concerns that the parents would attempt to remove the IEPs once they returned to their custody.

{¶14} Consistent with these examples, we see a tendency of the parents resisting professional guidance regarding their children's medical and educational needs. They have been obstructionist with respect to the releases of information requested by HCJFS and the GAL. While parents have signed some releases of information, consistent with the case plans, they have refused to sign others. In one instance, parents included a notation on a release of

information that it was signed under duress. During a medical appointment for the children, moreover, police were contacted because the parents were allegedly behaving in a belligerent manner when interacting with medical providers.

{¶15} The juvenile court's conclusion about the lack of "insight" might strike parents as vague or opaque, but these types of problems are what prompted that declaration. Accordingly, we find that the record includes adequate evidence of threats to the children's welfare, which establishes a compelling government interest in obtaining temporary custody of the children sufficient to withstand any due process challenge. We thus overrule the first assignment of error. However, we take no position on whether the record would support the grant of permanent custody to HCJFS.

II.

{¶16} The parents' second assignment of error maintains that HCJFS failed to make reasonable efforts towards reunification under R.C. 2151.419. "R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has made reasonable efforts to eliminate the continued removal of the children from their home." *In re M.*, 1st Dist. Hamilton No. C-210470, 2022-Ohio-673, ¶ 20. " 'Reasonable efforts' means 'the state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed.' " *Id.*, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. The juvenile court's reasonable efforts finding "will not be overturned as against the manifest weight of the evidence, if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Wayne Y.*, 6th Dist. Lucas No. L-07-1259, 2008-Ohio-245, ¶ 18. "In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *Id.* at ¶ 19. "Case plans are the tool that child

7

protective service agencies use to facilitate the reunification of families who, for whatever reason, be it abuse, neglect or otherwise, have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 Ohio App. LEXIS 4809, *7 (Oct. 30, 2001). "Case plans establish individual goals, concerns and the steps that the parent and agency will take in order to achieve reunification." *Id.*

{¶17} After reviewing the case plans filed in the juvenile court's docket, we conclude that the juvenile court could find that HCJFS engaged in reasonable efforts. The case plans provided diagnostic assessments, weekly supervised visits with the children, monthly meetings with a caseworker, parenting classes, and individual therapy. Although the parents concede that these services were provided, they claim that the services were unrelated to reunification. But the case plans explain that these services sought to address concerns that resulted in the parents losing custody (i.e., the lack of supervision of the children and medical/educational neglect). And these services could conceivably improve the parent's ability to supervise their children and meet their medical/educational needs. *See In re S.P.,* 5th Dist. Richland Nos. 2021 CA 00086 and 2021 CA 00087, 2022-Ohio-1656, ¶ 40 (holding that the state made reasonable efforts towards reunification by establishing a "workable case plan which included services" such as mental health and substance abuse treatment). Accordingly, we cannot conclude that the juvenile court's finding that HCJFS engaged in reasonable efforts ran against the manifest weight of the evidence. We therefore overrule the parents' second assignment of error.

III.

{¶18} The parents' final assignment of error posits that the juvenile court abused its discretion under Juv.R. 40(D)(4)(d) by failing to consider additional evidence at the hearing on the parents' objections to the magistrate's decision. Juv.R. 40(D)(4)(d) provides:

In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

"The juvenile court generally has broad discretion in deciding whether to hear additional evidence. * * * However, Juv.R. 40(D)(4)(d) limits the court's discretion when 'new evidence' arises after the magistrate's decision, but before the juvenile court's hearing on the objections." *In re K.S.*, 1st Dist. Hamilton No. C-190754, 2020-Ohio-6863, ¶ 9. "[T]he crux of the analysis is whether the party was put on notice that they would be reasonably expected to introduce the evidence at the hearing before the magistrate. * * * If the party had notice that they would be reasonably expected to introduce evidence on the subject, then the trial court has discretion to accept or reject that evidence." *Maddox v. Maddox*, 2016-Ohio-2908, 65 N.E.3d 88, ¶ 15 (1st Dist.).

**{¶19}** The parents assert that an affidavit filed two days before the objections hearing, attaching a volley of emails between counsel, should have been considered under Juv.R. 40(D)(4)(d). They claim that these emails are probative of whether HCJFS engaged in "reasonable efforts." The affidavit avers that the parents' attorney made several requests for information, which HCJFS allegedly failed to respond to in an adequate manner.

**{¶20}** To be sure, these emails were sent after the magistrate's decision was entered. As a result, it would have been impossible to proffer those emails before the magistrate. But the fact that this evidence came into existence between the magistrate's decision and the objections hearing is not necessarily dispositive. For example, in *In re K.S.*, the mother sought to introduce changes to her work schedule that occurred after the magistrate's

9

decision. *In re K.S.* at ¶ 11. She claimed that this new evidence impacted the allocation of parenting time under the parenting schedule. *Id.* Although these changes to her work schedule happened after the magistrate's decision, we held that Juv.R. 40(D)(4)(d) did not require the trial court to hear this evidence because the new work schedule did not constitute " 'new evidence' that could not have been produced for the magistrate's consideration." *Id.* at ¶ 13. We noted that the record indicated that the mother knew she would be offered a new job, and thus "fashioned her proposed parenting schedule to accommodate the anticipated work schedule." *Id.* Because the mother anticipated the change in her work hours, we held that the juvenile court did not violate Juv.R. 40(D)(4)(d) by refusing to consider the mother's new work schedule. *Id.*

{¶21} We believe that this case is analogous to *In re K.S.* In this case, the issue of whether HCJFS engaged in reasonable efforts was fully litigated before the magistrate (indeed, that issue represents the second assignment of error). Sending a few emails to the lawyers after the fact to prove up the point doesn't strike us as the type of evidence envisioned by Juv.R. 40(D)(4)(d) (and we remain unconvinced that the lawyer emails here would qualify as "evidence" under the rule, but we need not reach that question). The attorneys had been engaged in discussions throughout this dispute and there was no reason to believe that these communications would cease after filing objections to the magistrate's decision. Moreover, the magistrate explained that HCJFS' case plan services represented the basis of his finding that HCJFS engaged in reasonable efforts, rather than counsels' communications with one another. Thus, these subsequent communications shed little light on the propriety of the magistrate's finding that HCJFS engaged in reasonable efforts by providing the family with case plan services. Accordingly, we overrule the parents' third assignment of error.

*     *     *

**{¶22}** This case is certainly a difficult one, and one in which the juvenile court and the magistrate recognized significant strides made by the parents. But based on the record before us, and the applicable standards of review, we overrule all three assignments of error, and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.