**[Cite as *In re O.G.H.*, 2023-Ohio-1555.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: O.G.H. | : | APPEAL NO. C-220229 |
| | | TRIAL NO. F20-733X |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 10, 2023

*Moskowitz & Moskowitz, LLC,* and *James H. Moskowitz*, for Appellant Mother,

*Stagnaro Hannigan Koop, Co., LPA,* and *Michaela M. Stagnaro*, for Appellee Father.

**BERGERON, Presiding Judge.**

{¶1} After one date, plaintiff-appellant Mother unexpectedly became pregnant in October 2019 and informed defendant-appellee Father that the child, O.G.H., was his. As Mother and Father attempted to make parenting decisions together over the back of this unintended relationship, arguments, disagreements, and conflict surfaced and marred the situation. Father eventually initiated a petition for custody, and the trial court ultimately ordered shared parenting. Mother promptly appealed, challenging the trial court's order of shared parenting and the adoption of Father's shared parenting plan. Although we agree with the trial court's decision to order shared parenting, we find that the trial court impermissibly modified Father's shared parenting plan in contravention of R.C. 3109.04(D)(1)(a)(iii). Therefore, we remand the cause for further proceedings, but otherwise affirm the trial court's judgment.

I.

{¶2} It did not take long for Father and Mother to stumble as their unintended relationship unfolded—both parties acknowledge that they were hardly acquainted with each other upon Mother's surprise pregnancy. The two live approximately a half hour apart, with Father living in Northern Kentucky and working for the Cincinnati Police Department, while Mother lives in Montgomery and works from home as an electrical engineer.

{¶3} After Mother determined that she would proceed with her pregnancy, Father offered vows of support, but these struck Mother as hollow in light of his other conduct: he asked Mother for a paternity test, questioned what the two of them needed to even discuss moving forward, and failed to attend any prenatal appointment dates,

despite promising otherwise. The two attended a parenting class that Father scheduled and paid for, but he ducked out of the class to take a phone call, further confounding Mother.

{¶4} After the child's birth, each party desired for the other to move closer to facilitate parenting time transitions, but neither actually did anything about it. Additionally, Mother and Father certainly harbor hurt feelings and distrust of the other: for example, Mother was upset to discover that Father misled her about his COVID status near the time of the child's birth, leading to Father meeting O.G.H. for the first time 18 days after her birth. Father also represented in an affidavit that "Mother has only allowed me to see [O.G.H.] four times," which he later admitted as being false.

{¶5} For his part, Father chronicles grievances such as Mother elected not to give the child Father's last name despite his desire; she did not list him as an emergency contact at O.G.H.'s daycare; and she selected the child's daycare and healthcare provider without his input. Ultimately, the parties dispute whether Mother excluded Father from decision-making, or whether Father's lack of participation forced Mother to make decisions for O.G.H. unilaterally.

{¶6} Because the couple was unmarried at the time of O.G.H.'s birth, Mother began as the sole residential parent and legal custodian of the child. R.C. 3109.042(A). Father initiated this legal proceeding by filing a complaint for custody and/or shared parenting with the Hamilton County Juvenile Court in July 2020. Soon after, Father filed his proposed shared parenting plan with the court—Mother, desiring sole legal custody of O.G.H., did not file a shared parenting plan.

**{¶7}** After a trial before a magistrate, the magistrate ordered that O.G.H. remain in the legal custody of Mother, denying Father's petition for custody. Upon review of Father's objections, however, the trial court set aside the magistrate's decision, and ordered shared parenting. The trial court concluded that the two had "been successful at building a working co-parenting relationship with each other, that they have been able to create Parenting Time arrangements that work for them and to later make modifications to existing arrangement as needed, and that they have been able to address, cooperate, and compromise on areas where they have different preferences, all while putting the needs of the child as their primary concern."

**{¶8}** As part of the trial court's order, it adopted Father's shared parenting plan with four modifications concerning the communication method the parties would use, the selection of O.G.H.'s doctor, O.G.H.'s extracurricular activities, and O.G.H.'s religious upbringing. On the same day that the trial court released its order, Mother filed a notice of appeal with this court. Father later filed a motion with the trial court to approve and adopt an amended shared parenting plan, with the aforementioned changes that the trial court fashioned. But the court could not rule on the motion given the pendency of this appeal.

**{¶9}** Mother pursues four assignments of error before this court: that the trial court erred in adopting Father's proposed shared parenting plan when it modified the plan, the court abused its discretion in making orders regarding the division of expenses in the absence of evidence of income, the court erred in taking additional evidence at the objection hearing without providing prior notice, and the court abused its discretion in ordering shared parenting.

4

II.

**{¶10}** We address Mother's assignments of error out of order for analytical ease, beginning with her challenge to the trial court's shared parenting determination, a matter we review for an abuse of discretion. *See Meisner v. Walker*, 10th Dist. Franklin No. 15AP-671, 2016-Ohio-215, ¶ 12 ("We review a trial court's decision to adopt a shared-parenting plan for abuse of discretion.").

**{¶11}** "An abuse of discretion connotes more than a mere error of judgment; rather, 'it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.' " *Hayes v. Durrani*, 1st Dist. Hamilton No. C-190617, 2021-Ohio-725, ¶ 8, quoting *Boolchand v. Boolchand*, 1st Dist. Hamilton No. C-200111, 2020-Ohio-6951, ¶ 9. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

**{¶12}** Notwithstanding this standard of review, Mother frames her assignment of error as a manifest weight and sufficiency challenge—she largely argues that the evidence and record before the court contradicts the trial court's conclusion that the parents successfully built a workable co-parenting relationship with each other. While Mother devotes many pages in her brief to detailing facts that allegedly refute the trial court's findings, she largely fails to cite record substantiation of these points. *See* App.R. 16(A)(7) (requiring the argument section of the brief to include "citations to the authorities, statutes, and parts of the record on which the appellant relies").

5

{¶13} Nor does she cite any caselaw that would help guide our inquiry. Instead, she points to the statutory authority embodied in R.C. 3109.04(F)(2)(a) and (d), as two factors implicating whether shared parenting furthers the best interest of the child. While Mother identifies these two factors and emphasizes communication challenges encountered by the parents, R.C. 3109.04 provides a non-exhaustive list of factors that a trial court should consider in evaluating whether shared parenting furthers the best interest of the child. *See* R.C. 3109.04(F)(1)(a)-(j); R.C. 3109.04(F)(2)(a)-(e); R.C. 3119.23(A)-(Q). The trial court's decision discussed roughly a dozen of these factors, but Mother fails to address the balance of them.

{¶14} And regardless, just because Mother and Father do not communicate in optimal fashion does not mean that they are incapable of joint action in O.G.H.'s best interest. *See Woodford v. Woodford*, 10th Dist. Franklin No. 20AP-377, 2022-Ohio-3656, ¶ 13-14 ("[T]he court adopted proposed findings of fact with respect to R.C. 3109.04(F)(1) and (2) that were supported by record evidence[.] * * * [W]hile '[t]he parents do not *currently* communicate [] well with each other * * * *they each love [child] and have followed the Court's orders.'* * * * The court accordingly concluded that the parties would be capable of joint action in [child's] best interest * * * .") (Emphasis sic.). Similar to the parents in *Woodford*, the trial court here found that Father and Mother both love O.G.H. and can co-parent in her best interest, notwithstanding certain tensions between the two.

{¶15} The trial court here walked through an analysis under R.C. 3109.04 before concluding that shared parenting was in the best interest of O.G.H. In large measure, the court emphasized the following factors in favor of shared parenting: while Mother wishes to be the sole legal custodian, she believes that the child needs to

6

spend time with Father; both Father and Mother and their respective families have a relationship with O.G.H.; O.G.H. appears to be well-adjusted to both parents' home environments; the parties have gained an understanding of one another that will likely continue to evolve as the parties grow and learn; and both parents desire for the other to be involved in the child's life and believe that the other is an appropriate parent. *See* R.C. 3109.04(F)(1) and (2). Additionally, the trial court found that the parents' geographical proximity to one another, living a mere 30 minutes apart, would not pose any significant challenges in shared parenting.

{¶16} In light of the trial court's thorough analysis, its consideration of the appropriate statutory factors, and Mother's failure to identify contrary authority or record citations, we do not see any abuse of discretion in the court's shared parenting determination. We accordingly overrule Mother's fourth assignment of error.

III.

{¶17} Mother also insists that the trial court abused its discretion in its order regarding the division of childcare expenses when neither side presented evidence of income. In this respect, Mother highlights that Section II of the shared parenting plan calls for child support to be addressed under the case numbered P20-774x, and the section addressing childcare also acknowledges a "support order," yet no support order is set forth in the judicial entry.

{¶18} Mother, however, does not cite any statute, caselaw, or other authority in support of this assignment of error. *See* App.R. 16(A)(7). In Mother's reply brief, she does highlight R.C. 3109.04(G), which provides: "A plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living

7

arrangements [and] child support obligations * * *." According to Mother, while the statute requires plans to include a provision acknowledging that child support will be addressed in a separate court order, it does not require that the court make an order allocating the final responsibility for these costs.

{¶19} Based on the limited argument in Mother's appellate brief, we do not see any abuse of discretion here. While the shared parenting plan does not specifically address how childcare or child support is to be allocated, it does refer to the child support case numbered P20-774x, which was initiated by Father on the same day as this custody case. We accordingly overrule Mother's second assignment of error.

IV.

{¶20} For her third assignment of error, Mother maintains that the trial court abused its discretion in allowing Father to re-explain an issue to the trial court—already addressed before the magistrate—ultimately allowing him to change his testimony, and without notifying the parties that the trial court would be taking additional evidence.

{¶21} In part, Mother frames this as a due process issue: she highlights that the scheduling entry for the hearing on the objections only notified the parties that the court would entertain oral arguments, saying nothing about additional evidence or any evidentiary hearing. Without any head's up on that point, she maintains, the court's decision to consider additional evidence prejudiced her because she did not come prepared to present evidence at the hearing.

{¶22} Generally, a party should receive appropriate notice " 'that they would be reasonably expected to introduce the evidence at the hearing before the [court]. * * * If the party had notice that they would be reasonably expected to introduce evidence

8

on the subject, then the trial court has discretion to accept or reject that evidence.' " *In re J.L.*, 1st Dist. Hamilton No. C-210586, 2022-Ohio-2885, ¶ 18, quoting *Maddox v. Maddox*, 2016-Ohio-2908, 65 N.E.3d 88, ¶ 15 (1st Dist.).

**{¶23}** Here, however, it does not appear that the trial court actually took additional *evidence*. The hearing in question occurred over Zoom, and the record reveals that the trial court asked some questions of both Mother and Father, but it does not indicate that either party was sworn in before they answered the trial court's questions. And "[u]nsworn statements * * * do not constitute evidence * * * ." *See Fifth Third Bank v. Schaffer*, 10th Dist. Franklin No. 13AP-118, 2013-Ohio-5702, ¶ 7. Based on our review of the record, we do not find that any other evidence was introduced or considered by the trial court at the hearing.

**{¶24}** Beyond this point, Mother never objected during the hearing to any lack of notice (counsel generically objected to taking any evidence), nor did Mother claim any prejudice based on the court's asking some clarifying questions. Although we can certainly imagine how a lack of notice could create reversible error on other facts, the record at hand fails to establish that.

**{¶25}** Finally, even if we consider the unsworn statements to constitute "evidence," we see no abuse of discretion in the trial court's consideration of them under Juv.R. 40.

**{¶26}** Mother argues that under Juv.R. 40(D)(4)(d), upon a party filing an objection to a magistrate's decision, the trial court must undertake an independent review as to objected matters, and "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the

9

magistrate." According to Mother, this "evidence" fails to qualify as new evidence within the confines of Juv.R. 40(D)(4)(d). *See In re K.S.*, 1st Dist. Hamilton No. C-190754, 2020-Ohio-6863, ¶ 9, quoting *Maddox*, 2016-Ohio-2908, 65 N.E.3d 88, at ¶ 18-19 ("Juv.R. 40(D)(4)(d) limits the court's direction when 'new evidence' arises after the magistrate's decision, but before the juvenile court's hearing on the objections.").

**{¶27}** But, "the trial court *must* conduct an 'independent review as to objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.' " (Emphasis sic.) *In re G.H.*, 6th Dist. Ottawa No. OT-22-009, 2023-Ohio-295, ¶ 42, quoting Juv.R. 40(D)(4)(d). And Juv.R.40(D)(4)(b) provides a flexible framework to enable the juvenile court to take additional evidence in appropriate circumstances. *See* Juv.R. 40(D)(4)(b) ("**Action on magistrate's decision.** Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.").

**{¶28}** The record reflects that the trial court, with Mother, Father, and their lawyers present, asked a few clarifying questions of each of them. Neither lawyer requested a chance to cross-examine or ask any follow up questions. We do not see any indication that Father changed his testimony, but even if he did, such a maneuver may not have inured to his benefit. Regardless, on this record, we hold that the court's clarifying questions were appropriate and consistent with Juv.R. 40(D)(4)(b) and its general duties in undertaking an independent review of the record. *See In re P.S.*, 10th Dist. Franklin No. 07AP-516, 2007-Ohio-6644, ¶ 26, citing Juv.R. 40(D)(4)(d) ("In reviewing the credibility of [the witness], the trial court was free to believe all, part or

none of her testimony * * * [when] the trial court is reviewing a decision of a magistrate."); *In re A.S.*, 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, ¶ 16 ("[T]he credibility of the witnesses * * * was squarely before the juvenile court for an independent review.").

{¶29} For the reasons explained above, we overrule Mother's third assignment of error.

V.

{¶30} Finally, we turn to Mother's first assignment of error regarding the trial court's modification of Father's proposed shared parenting plan. Pursuant to the plain terms of the statute and extant caselaw, the juvenile court lacked discretion to modify or amend the shared parenting order under the factual scenario at hand: "[U]nder R.C. 3109.04(D)(1)(a)(iii), if only one parent files a shared parenting plan, the court shall review the plan to see if the plan is in the best interest of the children. If the court determines that the proposed plan is not in the best interest of the children, the court may request that the parent make appropriate changes to address the court's objections." *Holden v. Holden*, 12th Dist. Brown No. CA2015-07-016, 2016-Ohio-5557, ¶ 18. "The statute does not give the court authority to create its own shared parenting plan." *Id.*; *see Schattschneider v. Schattschneider*, 3d Dist. Auglaize No. 2-06-24, 2007-Ohio-2273, ¶ 6 ("The record is clear in this case that the court considered [Father's] shared parenting plan and was generally satisfied that such plan would be in the children's best interests. However, the court abused its discretion by modifying the plan. If a trial court has objections to portions of a submitted shared parenting plan, it may request that the party file a modified shared parenting plan to address its concerns."); *Robinette v. Robinette*, 8th Dist. Cuyahoga No. 88445, 2007-Ohio-2516,

¶ 8 ("If, however, the court finds the plan is not in the best interest of the child, the court may make suggestions for modifications to the plan. Should the party fail to make the proposed changes, or the court is not satisfied with the changes submitted, the statute does not authorize the court to create its own shared parenting plan.").

{¶31} Father struggles to respond to this point, positing that because the changes made benefited Mother's position, this court should consider this as essentially harmless error. Although the modifications made by the court seem consistent with some of Mother's objectives, based on the authority above, the juvenile court lacked authority to revise a shared parenting plan in these circumstances. Rather, the proper procedure would have been to request that Father modify the plan based on the court's concerns, and then the court could enter it if it found it in the best interest of the child. Therefore, we hold that the trial court committed reversible error when it violated R.C. 3109.04(D)(1)(a)(iii), sustain Mother's first assignment of error, and remand for further proceedings consistent with this opinion and the statutory requirements.

* * *

{¶32} Based on a review of the record, we sustain Mother's first assignment of error and overrule her other three assignments of error. We accordingly reverse the trial court's judgment in part and remand for further proceedings, including consideration of Father's motion to approve and adopt the amended shared parenting plan. The juvenile court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**WINKLER** and **KINSLEY, JJ.,** concur.


Please note:

> The court has recorded its entry on the date of the release of this opinion.